Filed 7/8/26  P. v. White CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B335969 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. SA102931 |
| v. | |
| TYLON DESHAWN WHITE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge.  Affirmed with corrections.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

The jury selection in this murder case complied with the recent statute that imposed new restrictions on voir dire. We affirm and order correction of the abstract of judgment. Statutory citations are to the Code of Civil Procedure.

A jury convicted Tylon Deshawn White of first degree murder and a gun charge. White challenges only the exclusion of three women from his jury.

White's 2023 trial featured video evidence and testimony from an eyewitness who saw White and others beat a man to the ground outside a house party. The witness watched White then shoot the man to death.

The disputed issues in this appeal all concern jury selection. The prosecution struck several women during voir dire, and White claims the court should have sustained his objections to three of them under section 231.7.

The Legislature recently enacted this provision to curb improper removals of jurors based on membership in a protected group like race or gender. Section 231.7 establishes new procedures for identifying unlawful discrimination and implicit bias with peremptory challenges. (§ 231.7, subd. (a); *People v. Garcia* (2025) 115 Cal.App.5th 92, 102.)

Subdivision (d) of the statute lists factors a court may consider in ruling on an objection to a peremptory challenge. (§ 231.7, subds. (b) & (d)(3).) One of these factors is "[w]hether the reason given by the party exercising the peremptory challenge was contrary to or unsupported by the record." (§ 231.7, subd. (d)(3)(F).) The statute also lists reasons that are presumptively invalid. (§ 231.7, subds. (e) & (g)).) None is at issue here.

2

After evaluating the reasons "actually given" and the totality of the circumstances, the trial court must decide whether there is a substantial likelihood that an objectively reasonable person would view a protected category like gender as a factor in the challenge. The court must explain its reasoning on the record. (See § 231.7, subds. (c) & (d)(1).)

We review the trial court's ruling independently but its express factual findings deferentially for substantial evidence. We may not impute findings to the trial court or speculate about other possible justifications for a peremptory challenge. (§ 231.7, subds. (d)(1) & (j).)

The trial court and counsel obeyed the statutory procedure.

Defense counsel objected and invoked section 231.7 after the prosecutor used his sixth peremptory challenge. Counsel noted five of the six prospective jurors were women, there was a pattern, and gender is a protected class under the statute.

Outside of the panel's presence, the court asked for the prosecutor's reasons for the challenges and the prosecutor gave them. The court considered these reasons, defense counsel's response, and the totality of the circumstances and overruled the defense objection. The court explained its reasoning using the statutory factors and noted other points that supported the prosecutor's decisionmaking:

1. The prosecutor twice accepted a jury panel that was evenly split between males and females.
2. Defendant White, the victim, and the eyewitness were males.
3. Gender did not bear on the facts of the case.

3

4. The prosecutor made eight challenges for cause, and all of these jurors were men, whereas the defense challenged two women for cause.

5. The prosecutor used his first peremptory challenge on a male.

6. The questioning of prospective jurors had not been cursory.

7. The record supported the reasons given for excusing these prospective jurors.

8. The stated justifications were neither presumptively invalid nor disproportionately associated with gender.  (See § 231.7, subds. (b)–(d).)

White does not challenge most aspects of this ruling.  His claim is narrow:  that the record does not support the reasons the prosecutor gave for excusing the three women at issue — Juror Numbers 9916, 0356, and 1057 — and instead shows the jurors' answers were appropriate.

White's claim is mistaken.  The gender-neutral reasons the prosecutor gave were grounded in the record.  They were also sensible.

The prosecutor based these peremptory challenges on the jurors' answers to questions about circumstantial evidence.  One challenge also hinged on the juror's family connection to a criminal defense lawyer.  The record supports these grounds.  We address each juror in turn.

I

Regarding Juror Number 9916, the prosecutor said he found her responses to a hypothetical concerning circumstantial evidence to be unreasonable.

4

Defense counsel described an imaginary scenario involving a cat and a mouse in a box. After modifying the hypothetical, she asked various jurors whether the cat was guilty — meaning the cat ate the mouse. She explained that, when the evidence gives rise to reasonable conclusions that differ, the law required them to select the one pointing to innocence — meaning the mouse escaped.

White's attorney had Juror Number 9916 assume there was a mouse-sized hole in the box, but after opening the box the juror found the cat covered in blood and only the mouse's bloody tail inside. Juror Number 9916 asked if there was more evidence to consider and was told no. Then she said there *would be doubt* the cat ate the mouse.

This answer startled the defense attorney: "There's doubt?" "Why? I mean he's covered in the blood and the tail is there. There's a lot of evidence that he ate it. Usually grab them by the tail first, I think."

Despite the defense puzzlement, Juror Number 9916 stuck with her view that it was reasonable to believe the mouse escaped.

Later, however, the prosecutor asked this juror whether it was reasonable to conclude the mouse got away. Now this juror had a one word answer: "No."

That is to say, this juror first said it was reasonable to conclude the mouse got away, and then she said it was *un*reasonable to conclude the mouse got away.

The prosecutor acted properly by striking this juror, and the court was right to rule the statute permitted this strike. The juror's initial reaction to the hypothetical was doubt as to guilt, even if she later conceded both the cat's guilt and the mouse's

5

escape were reasonable. One other juror, number 6898, similarly expressed an initial leaning toward acquittal. He said it was "likely, definite possibility" the mouse got away. The prosecutor also excused this juror with a peremptory strike. Other jurors the prosecution retained did not make such remarks. Juror 9916 ultimately concluded her initial response had been unreasonable. The prosecution pinpointed juror 9916's responses to the hypothetical as "not necessarily reasonable," and the trial court rightly stated the record supported the prosecutor's justification. This valid and straightforward logic does not support White's claim that the justification was pretext concealing gender discrimination.

## II

Turning to Juror Number 0356, the prosecutor acknowledged she was a former federal prosecutor and there might be a perception he would want prosecutors on the jury; but he did not "necessarily feel that way" as he did not "know necessarily what they're bringing to the table." He explained he sought to exclude this juror based on her responses to another circumstantial evidence hypothetical about a highlighter: Juror Number 0356 equivocated on what was a reasonable explanation for how the highlighter got from his hand to the courtroom podium and "she kind of began to raise the possibility that there were other things that may have happened."

The record supports this justification.

For this hypothetical, the prosecutor held a highlighter, and the panel watched him walk to a podium and place the highlighter on a book there. Then the prosecutor took the highlighter back and asked Juror Number 0356 to close her eyes for a few seconds. When she opened her eyes, the highlighter was

6

on the book.  The prosecutor asked how the highlighter got there. Juror Number 0356 suggested the prosecutor had moved it, noting she heard steps in that direction, heard the highlighter hit the book, and then heard the prosecutor come back.  When asked about other reasonable explanations based on the evidence, she speculated "Ms. Melikian [defense counsel] put the highlighter there in his pocket."  She conceded she did not hear anyone besides the prosecutor move and did not see anyone else, including defense counsel, with a highlighter.

The juror's answer was a leap from the evidence.  The prosecutor pressed this point with Juror Number 0356, who agreed she had drawn a conclusion unconnected to the evidence.

These record facts support the prosecutor's stated justification for excusing this juror.  The prosecutor did not need to accept Juror Number 0356's ultimate agreement with him and to ignore her earlier reluctance to reason from the evidence.

III

Finally, for Juror Number 1057, the prosecutor explained this juror had a criminal defense attorney in her family who she saw regularly.  This juror also had raised her hand in response to a question during the circumstantial evidence discussion.  The prosecutor did not elaborate further on this second ground.

The record supports both grounds.

In response to the court's questioning, Juror Number 1057 said her cousin was a criminal defense attorney, she was "pretty close" to this cousin, and she talks with this cousin about the cousin's work.

Later, when the prosecutor discussed circumstantial evidence and drawing reasonable conclusions from evidence, he asked the group whether anyone thought "they're not really a

reasonable person." Several people raised their hands. The prosecutor began following up row by row questioning those who had raised their hands, but he had pivoted to other topics by the time he reached seats 21 to 28. Juror Number 1057 was in seat 21.

White offered no argument concerning this second ground for the prosecutor's challenge, and nothing in the record calls it into question.

On the first ground, White argued other jurors who were close to defense lawyers were not stricken, implying the prosecutor displayed bias by striking Juror Number 1057. This argument misses the mark. What mattered to the prosecutor was having a close familial relationship with a *criminal defense lawyer*. In the first panel, Juror Number 1057 was the only one with a *criminal defense lawyer* in the family.

The prosecutor was consistent on this issue. In the second round of peremptory challenges, he struck two additional jurors who said they were related to a criminal defense attorney or to a lawyer who had done criminal defense work. The prosecutor also challenged another one of these jurors for cause. White ignores these facts.

The trial court found the record supported the reasons the prosecutor gave for his peremptory challenges. This ruling was correct. White has not shown the court erred in overruling White's section 231.7 objection.

\* \* \* \* \*

In its response brief, the prosecution says the abstract of judgment must be corrected to include the prison term for White's firearm enhancement under Penal Code section 12022.5, subdivision (a).

The jury found true the firearm allegation. The trial court declined to strike this enhancement and selected the low term of three years for it. The reporter's transcript shows the court imposed this term at the sentencing hearing, making White's total sentence three years plus 75 years to life. However, the abstract of judgment omits both the enhancement and the related determinate prison term.

The prosecution established the abstract of judgment should be corrected. White appears to concede the error by not replying to this point.

## DISPOSITION

We direct the trial court to prepare an amended abstract of judgment that includes the three-year prison term for the firearm enhancement and reflects an aggregate sentence of three years plus 75 years to life. The court must forward the amended document to the Department of Corrections and Rehabilitation. We otherwise affirm the judgment.

                                        WILEY, J.

We concur:


        STRATTON, P. J.



        SCHERB, J.

9